```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION
```

ANDRE M. CARSTARPHEN, SR.,          :
on behalf of
ANDRE M. CARSTARPHEN, JR.,          :

    Plaintiff,                      :

vs.                                 :
                                              CIVIL ACTION 05-0359-WS-M
JO ANNE B. BARNHART,                :
Commissioner of[1]
Social Security,                    :

    Defendant.                      :


## REPORT AND RECOMMENDATION

In this action under 42 U.S.C. 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*). The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was heard on January 24, 2006. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is recommended that the decision of the Commissioner be affirmed, that this action be dismissed, and that judgment be entered in favor Defendant Jo Anne B. Barnhart and against Plaintiff Andre M. Carstarphen, Sr. on behalf of Andre M. Carstarphen, Jr.

This Court is not free to reweigh the evidence or substitute

---

[1] Though this action is brought by the father, Andre M. Carstarphen, Sr., on behalf of his son, this Court will refer to the son as the Plaintiff.

its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born January 27, 1996. At the time of the administrative hearing, Carstarphen was eight years old, had completed the first grade, and was taking special education classes (Tr. 178). In claiming benefits, Plaintiff alleges disability due to mental retardation and Attention Deficit Hyperactivity Disorder (hereinafter *ADHD* (Doc. 10 Fact Sheet).

The Plaintiff filed a protective application for SSI on March 6, 2003 (Tr. 46-51). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Carstarphen was not disabled under the Social Security Listing requirements (Tr. 8-22). Plaintiff requested review of the hearing decision (Tr. 148-49A, 152) by the Appeals Council, but it was denied (Tr. 4-7).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Carstarphen alleges that he meets the requirements of Listing 112.05D (Doc.

10).  Defendant has responded to—and denies—this claim (Doc. 11).

The Court notes at the outset that there is evidence of record which was submitted to the Appeals Council which was not considered by the ALJ (*see* Tr. 154-72).  Plaintiff has not urged this Court to consider this evidence or argued that the Appeals Council improperly discounted it.

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence."  *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review."  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  However, "when the [Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence."  *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998), *cert. denied*, 525 U.S. 1124 (1999).

In examining the action at hand, the Court notes that the Appeals Council denied review of the additional evidence (Tr. 4-6).  Furthermore, as previously noted, Carstarphen claims that the ALJ's decision is not supported by substantial evidence and is not challenging the Appeals Council's decision to deny review

of the new evidence (Docs. 1, 10).  Therefore, this Court need not review the new evidence.  *Falge*, 150 F.3d at 1324.  The Court will limit its review of the evidence to the same evidence that the ALJ considered.  That evidence is as follows.

Plaintiff received speech therapy for a period of about four months, while only one year old, to correct a significant delay in language skills (Tr. 114-23).

On May 20, 2003, a mental status evaluation was conducted by Dr. Jeffrey J. Pappas who found Plaintiff to have a blunted affect and disorganized thought content (Tr. 141-42).  He was anxious and oriented with average intelligence, judgment, and insight; his memory was intact and his speech was normal.

On May 27, 2003, Lucile T. Williams, Psy.D., conducted an evaluation in which she found Carstarphen to have no loose associations and did not appear confused; however, he had no insight or understanding of himself (Tr. 124-27).  "He generally understood instructions readily.  Attitude toward tasks was oppositional.  He maintained poor interest and effort.  General approach to assessment tasks was slow and haphazard" (Tr. 126).  He appeared to give up easy on the tasks assigned him.  The WISC-III was administered, but Williams was unable to score the test, stating that Plaintiff's effort was "an invalid estimate of his current level of intellectual functioning due to poor motivation, lack of interest and effort, and haphazard approach to testing" (*id.*).  The tester's diagnostic impression was oppositional

4

defiant disorder.

On June 4, 2003, Mark A. Havard, a speech-language pathologist, examined Carstarphen and found him to have normal articulation, fluency, and oral motor skills (Tr. 128-29). However, "[h]is language testing was judged inaccurate due to his lack of responsiveness during the latter half of subtests.  The therapists believes [sic] that he functions at a normal level if not above normal" (Tr. 129).

On June 17, 2003, Plaintiff underwent another mental examination, this time by Annie L. Formwalt, Psy.D., who noted that he appeared oppositional (Tr. 130-32).  More specifically, the tester stated that "[h]e generally understood instructions readily but chose to act contrary to the directions given until redirected.  Attitude toward tasks ranged from adequate to oppositional.  He refused to attempt the Object Assembly Subtest.  He maintained fair to poor interest and effort.  General approach to assessment tasks was slow and haphazard" (Tr. 131).  The WISC-III was again administered and Carstarphen achieved a verbal score of 73, a performance score of 74, and a full scale score of 71.  Formwalt suggested that Plaintiff was malingering.

Two days after this evaluation, Carstarphen was again evaluated, this time by a psychologist with the Mobile County School Board, because he had failed every graded subject area in the first semester of the previous school year (Tr. 105; *see generally*, Tr. 104-10).  One of the tests Plaintiff took was the

Vineland Adaptive Behavior Scale which showed that he was "significantly dependent upon others for accomplishment of tasks which his non-disabled peers can typically manage alone" (Tr. 107).  Another test taken was the Comprehensive Test of Nonverbal Intelligence on which Carstarphen "obtained a Nonverbal Intelligence Quotient of 69 which classifies him in the Very Poor range of intelligence and ranks him at the 2nd percentile for children his age" (Tr. 108).  This result indicated that his "cognitive abilities [were] severely delayed relative to that of his typical peers and suggest that his potential for acquiring typical school skills may be substantially limited" (Tr. 108-09).  These tests led to Plaintiff's being placed in special education classes (*see* Tr. 97-98).

Records from the treating physician, Dr. Mark McDaniel, show that Carstarphen received all of his immunizations so that he could go to school (Tr. 145).  On August 28, 2003, Plaintiff began taking five milligrams of ritalin[2] to help him in school at the request of his father (Tr. 139, 144).  Two months later, McDaniel noted that Carstarphen was doing better in school but was still easily distracted, so his prescription was increased to twenty milligrams (Tr. 144).  On that same date, the doctor completed a form which indicated that Plaintiff suffered from

---

[2]"*Ritalin* is a mild central nervous system stimulant" used to treat Attention Deficit Disorders in Children.  *Physician's Desk Reference* 1896-98 (52nd ed. 1998).

6

marked inattention, impulsiveness, and hyperactivity as well as a marked impairment in age-appropriate social functioning and deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (Tr. 138). On March 2, Dr. McDaniel continued the twenty-milligrams-of-ritalin-per-day prescription (Tr. 144).

School records indicate that during the week of August 29, 2003, Plaintiff scored a 30/E in reading, a 20/E in spelling/language, a 62/D in math and a D in behavior (Tr. 90).  On November 14, Carstarphen received an AA on his behavior report (Tr. 91).  On November 19, 2003, Plaintiff received a B in both reading and math and was noted to have "demonstrated usually" in social studies, science, and language arts while "demonstrating consistently" in social development and work skills (Tr. 92). During the week of January 5, 2004, received a 50/E in reading, but an 80/B in math (Tr. 88).  A report card from January 12, 2004 showed that Plaintiff had improved from a C to an A in reading while maintaining a B average in math in the first and second quarters of the second grade; he also showed improvement in language arts, social studies, and science though his social development/work-related skills showed less consistency (Tr. 93).

At the hearing before the ALJ, Plaintiff's father testified that the medications had helped his son (Tr. 179, 182); Carstarphen was taking special education classes in reading, math, and science (Tr. 180).

A medical expert (hereinafter *ME*), Dr. Peter Bertucci, testified that he had studied all of the evidence of record and had determined that Plaintiff was not disabled (Tr. 186-89). The doctor noted that there was no diagnosis of mental retardation, that Carstarphen had a learning disability, and that tester Formalt had indicated that the IQ tests did not reflect Plaintiff's true abilities; Bertucci further stated that the test results obtained by the school board were "about the same" as those obtained by Formalt (Tr. 188). It was also his opinion, based on the evidence, that Carstarphen did not have a marked impairment in acquiring and using information, one of the domain analysis categories, and that he would be less than marked to marked in attending and completing tasks, a second domain category (Tr. 189).

The ALJ faithfully summarized the medical evidence of record before giving "controlling weight to medical expert Peter S. Bertucci" (Tr. 21). The ALJ further stated that his findings were supported by the testimony of Carstarphen's father (*id.*). After performing domain analysis and finding that he was, at most, markedly limited in one of the six categories, the ALJ concluded that Plaintiff was not disabled under the Listings.

Plaintiff claims that he meets the requirements of Listing 112.05D. That listing requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant limitation of

8

function."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05D (2005).  Carstarphen's argument is that the Nonverbal Intelligence Quotient of 69 scored on the Comprehensive Test of Nonverbal Intelligence given by the School Psychologist satisfies the first prong of the Listing.  The argument continues that the finding by the ALJ that he had a severe impairment, ADHD, which the ME classified as a marked impairment, supplies the second prong of the Listing, leading to the conclusion that Plaintiff must be disabled.

The Court notes, however, that the ME stated that there was no real difference in the IQ scores among the tests and that the two State examiners specifically noted that Plaintiff had not provided his best effort during the evaluations.  The ALJ specifically gave controlling weight to the ME.  Though he did not explicitly find the 69 IQ to be equivalent to the other score, the ALJ implicitly reached that conclusion.  This conclusion is further supported by the fact that the two tests were taken a mere two days apart.

Plaintiff has further argued that the ME—and ultimately, the ALJ—improperly concluded that he was only markedly limited in one of the six domains of functioning.  Though the ALJ found him to be markedly limited in the "attending and completing tasks" domain, Carstarphen has argued that he should have been found as limited in the "acquiring and using information" domain.  Plaintiff attributes the ALJ's wrong conclusion to a failure to

9

consider the opinions of his school teachers.

Without going through the specific domain analysis which the ALJ has performed, the Court notes that it has reviewed and summarized the school records previously. Those records show that Plaintiff has had problems but that his grades and behavior have improved with the ritalin prescription. Plaintiff's father also testified to this improvement. The Court finds that the ALJ's conclusion that Carstarphen is not markedly limited in acquiring and using information to be supported by substantial evidence.

In reaching its decision, the Court notes that there is evidence suggesting that Plaintiff has a disability. However, there is also evidence, on which the ALJ has based his decision, that he is not disabled. The Court finds substantial evidence for the ALJ's decision; though it is not a preponderance of the evidence, *Brady*, 724 F.2d at 918, there is substantial evidence.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is recommended that the Secretary's decision be affirmed, see *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Jo Anne B. Barnhart and against Plaintiff Andre M. Carstarphen, Sr. on behalf of Andre M. Carstarphen, Jr.

```
         MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
            AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
                AND FINDINGS CONCERNING NEED FOR TRANSCRIPT
```

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

   A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in

this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 26th day of January, 2006.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE
